**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO.: |
| v. | ) ) | **COMPLAINT** |
| TOYOTA BOSHOKU JACKSON TENNESSEE, LLC f/k/a TOYOTA BOSHOKU of TENNESSEE, and TOYOTA BOSHOKU AMERICA, INC. | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMAND |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a) (Title VII) and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the bases of sex, female, and retaliation, and to provide appropriate relief to a class of aggrieved current and former female employees harmed by such practices.

As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission alleges Defendants Toyota Boshoku Jackson Tennessee, LLC, formerly known as Toyota Boshoku of Tennessee, and Toyota Boshoku America, Inc., operating as an integrated enterprise, violated Title VII when they subjected a class of aggrieved current and former female employees to ongoing unwelcome sexual harassment, resulting in a hostile work environment. The harassment caused the constructive discharge of some female employees.

1

Defendants also retaliated against certain female employees for complaining about the harassment by terminating their employment

## JURISDICTION AND VENUE

1.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f)(1), §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, and 42 U.S.C. §2000e-2(a) and 2000e-3(a), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.       The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Eastern Division.

## THE PARTIES

3.       Plaintiff Equal Employment Opportunity Commission (the Commission) is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.       At all relevant times, Defendants Toyota Boshoku Jackson Tennessee (TBJT) formerly known as Toyota Boshoku of Tennessee and Toyota Boshoku America, Inc., (TBA) (or Defendants), have operated as an integrated enterprise or joint employer.

5.       Defendants TBJT and TBA share core departments, including a Human Resources department located at TBA's Headquarters, 1360 Dolwick Drive, Erlanger, Kentucky.

6.       Defendants TBJT and TBA share the same Team Member Employee Handbook and employment policy handouts.

7. Defendants TBJT and TBA use the same internal job application form placed on TBA's letterhead.

8. Defendants TBJT and TBA use the same letterhead.

9. TBJT and TBA use the same letters welcoming newly hired employees in Jackson, Tennessee with the TBA name and logo.

10. During on-boarding, each employee in Jackson, Tennessee learns they may seek assistance from TBA's Employee Assistance Program.

11. Afterwards, if Defendants promote, demote, or fire employees, the employee reads the employment action in a letter on TBA's letterhead sent from 1360 Dolwick Drive, Erlanger, Kentucky.

12. When employees file complaints of sexual harassment, TBJT submit these complaints to corporate, Erlanger-based Human Resource office and its manager.

13. Employees acknowledged receipt of TBA's Team Member Handbook.

14. The Handbook instructs employees to comply with TBA's policies and practices.

15. The Harassment Policy is listed on TBA's letterhead.

16. Defendants TBJT and TBA use the same email suffix, Toyota-Boshoku.com.

17. Defendants TBJT and TBA have centralized control of labor relations and personnel.

18. Defendants TBJT and TBA also share an identity of interest/actual notice.

19. Defendant TBJT reports all human resources matters to TBA's corporate headquarters, 1360 Dolwick Drive, Erlanger, Kentucky where Human Resources provide support to TBJT.

20. Because of the above reports to TBA by TBJT, TBA knew of all complaints and charges of discrimination filed by employees.

21. TBA knew of the investigations conducted at TBJT by the Commission.

22. Because TBA centralized human resources with TBJT, TBA knew or was constructively aware of the Determination and Conciliation processes.

23. At all relevant times, Defendants TBJT and TBA have continuously done business in the State of Tennessee, in the City of Jackson, and have continuously had at least fifteen (15) employees.

24. At all relevant times, Defendants TBJT and TBA have continuously been and are now an employer engaged in an industry affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

25. More than thirty days before the institution of this lawsuit two female Charging Parties filed charges of discrimination with the Commission, Charge Nos. 490-2023-00434 and 490-2024-02934, on November 8, 2022, and July 2, 2024, alleging violations of Title VII by Defendants.

26. On June 24, 2025, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe Defendants violated Title VII and the Commission invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and to provide appropriate relief.

27.     The Commission engaged in communications with Defendants to provide Defendants with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

28.     The Commission was unable to secure from Defendants conciliation agreements acceptable to the Commission.

29.     On August 19, 2025, the Commission issued Defendants Notices of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

30.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## **BACKGROUND**

31.     Defendants operate a manufacturing facility located at 3300 Ridgecrest Road, Jackson, Tennessee, producing components used in the assembly of new motor vehicles for automobile manufacturers.

32.     Defendants' United States headquarters is located in Erlanger, Kentucky.

33.     Defendants employ approximately 500 employees at their TBJT facility and over 11,000 employees in North and South America at 21 locations.

34.     During onboarding, Defendant TBJT requires its employees to acknowledge receipt of its TBA's Team Member Handbook containing its Sexual Harassment Policy (Policy).

35.     The Sexual Harassment Policy prohibits harassment against any team member, by any other team member, supervisor, or manager.

36.     Defendants also require supervisors to report and take seriously complaints of harassment.

37.     The Policy directs employees to immediately report violations to their supervisor, manager, HR, or call the Ethics Point Hotline.

38.     Defendants represent they take all reported violations seriously, investigate them, and take remedial action, including termination.

39.     The Policy subjects any individuals who engage in such behavior to disciplinary action, up to and including termination of employment.

40.     Defendants' Team Member Handbook prohibits retaliation against team members for making a good faith report of discrimination or harassment or for cooperating or participating in an investigation of discrimination or harassment complaint.

41.     Around March 2019, Defendants hired Charging Party No. 1 as a Machine Operator in the Welding Department.

42.     Around June or July 2021, the Assistant Manager cornered Charging Party No. 1 in a conference room and instructed her to have sex with him or perform oral sex on him to receive a promotion to a Team Leader position, either at the plant or a nearby hotel.

43.     Although Charging Party No. 1declined, the Assistant Manager kept Charging Party No. 1alone in the conference room for over an hour, offering her a pay raise and telling her she "had to pick a manager to have sex with."

44.     The Assistant Manager finally allowed Charging Party No. 1 to return to work when she told him she would consider his offer.

45.      The Assistant Manager frequently stared at Charging Party No. 1 while licking his lips.

46.     On or around January 2022, Defendants promoted Charging Party No. 1 to Production Team Member in the Kaizen Department, under the supervision of the Kaizen Group Leader.

47.     Charging Party No. 1 later discovered the Kaizen Group Leader was friends with the Assistant Manager.

48.     The Kaizen Group Leader told Charging Party No. 1 around March 2022, that she should have "used what she had" and had sex with the Assistant Manager.

49.     Later, Charging Party No. 1 was again assigned to the Assistant Manager's team, and he resumed sexually harassing her.

50.     The Assistant Manager told Charging Party No. 1 that she would have sex with him "whether she wanted to or not."

51.     Charging Party No. 1 again refused, and the Assistant Manager continued to harass her, telling her that she would "be his" no matter if she was dating someone or not.

52.     While other male employees were present, the Assistant Manager touched Charging Party No. 1 in a manner intended to create the impression that they were dating.

53.     The Assistant Manager also sent Charging Party No. 1 text messages stating that "no one was (sic) going to believe you, I can pull strings," "you should have sucked my penis and had sex with me," and "no, you want to take the long road and have morals."

54.     When a Senior Team Leader pressed his genitals against Charging Party No. 1, the Assistant Manager instructed him to stop because Charging Party No. 1 "belonged to him."

55.     Charging Party No. 1 believed she had to comply with the Assistant Manager's demands to be promoted.

56. Charging Party No. 1 stated that employees would not report the Assistant Manager because Defendants would not take any action.

57. Because of the Assistant Manager's continuing harassment, Charging Party No. 1 was forced to resign.

58. Around May 2022, Defendants hired Charging Party No. 2 as a Supplier Quality Specialist.

59. Charging Party No. 2 alleges shortly after she was hired, the Assistant Manager and other Group Leaders, and other males, began sexually harassing her.

60. They would come up close behind her and touch their genitals on her back.

61. One would comment about how Charging Party No. 2's backside looked, and said he wanted to perform a sexual act on her.

62. Group Leaders openly harassed subordinates because the company would not punish them.

63. When Charging Party No. 2 reported these incidents to the Assistant Manager, a female, she told Charging Party No. 2 that Charging Party No. 2 needed to develop a thicker skin because this was the nature of  manufacturing work.

64. Charging Party No. 2 also reported the sexually harassing incidents experienced by her (and by Team Leader Fredericka Smith) to the Human Resources Manager at the Jackson, Tennessee location, and to the Human Resource Assistant Manager at the Erlanger, Kentucky TBA corporate office to which TBJT reports.

65. Group and Team Leaders ostracized Charging Party No. 2 for complaining.

66. They excluded Charging Party No. 2 from meetings and moved her belongings to falsely make her believe she had lost them.

67. Defendants eventually terminated Charging Party No. 2 on or about November 28, 2023, for alleged unprofessional behavior towards an outside contractor.

68. Charging Party No. 2 and witnesses believed she acted appropriately, and Defendants actually terminated Charging Party No. 2 for her complaints of sexual harassment about male Group Leaders and her supervisor to Human Resources.

69. Some employees corroborated Charging Party No. 2's allegations of sexual harassment by the assistant manager and group leaders.

70. A former female Team Leader noted that the city of Jackson is a difficult place to get a job and women working at the facility endured the harassment for that reason.

71. When a supervisor made comments of a sexual nature to the former female Team Leader, around May 2024, she complained to Human Resources and the Assistant Manager.

72. Defendants took no action on the former female Team Leader's complaints.

73. Shortly after the former Team Leader's complaint, Defendants discharged her.

## STATEMENT OF CLAIMS

## I. SEXUAL HARASSMENT CLAIMS OF A CLASS OF AGGRIEVED FEMALES

74. Since at least on or around January 2021 and continuing into 2024, Defendants engaged in unlawful employment practices at its facility located at 3300 Ridgecrest Road Ext, Jackson, Tennessee 38305, in violation of Sections 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

75. The unlawful employment practices include subjecting a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray, to a sexually hostile work environment based on their sex, female.

76.     Between January 2021 and July 2024, Defendants TBJT and TBA hired numerous females as operators, welders, arc welders, machine technicians, human resource specialists, and team leads.

77.     Employees working at the Jackson facility could earn from $15.50 to $30 or more per hour.

78.     Shortly after hire, females as a class, experienced severe or pervasive sexual harassment from the male employees, including operators, team members, supervisors, assistant managers, and group leaders.

79.     The sexual harassment consisted of these male employees making comments about female employees' bodies, including buttocks, and inviting a female employee to sit on a male employee's face for sexual gratification.

80.     The sexual harassment consisted of a male supervisor making comments that he desired to perform cunnilingus on a female employee and wanted to have sexual intercourse with her.

81.     The same supervisor also agreed to approve a female employee's request for time off if the female employee would have sexual relations with the supervisor.

82.     The harassment consisted of supervisors looking up Facebook accounts of a female employee and showing the photos to male employees while making sexual comments about the photos.

83.     The sexual harassment consisted of a Team Lead offering to pay an employee to have her hair and nails done in exchange for sex.

84.     The sexual harassment consisted of a male team member in the Maintenance Department touching a female employee inappropriately multiple times.

85.    A Team Lead showed a pornographic video of a female employee to employees in the workplace performing oral sex on him.

86.    The sexual harassment consisted of male employees engaging in sex with subordinate employees in and around the facility.

87.    The sexual harassment consisted of a Team Lead sending a female employee numerous text messages propositioning her for sex.

88.    Another Team Member requested sex and pictures from the same female employee in paragraph 87 in exchange for assisting her with purchasing a car.

89.    Another supervisor made comments to a female such as, "I want to eat your booty."

90.    While a female employee was performing a work task on her hands and knees, another supervisor commented, "I always want to see you on your knees."

91.    Other comments made by a supervisor include, that he wanted to have one day with a female.

92.    Male employees made comments about a female employee's body and buttocks while the female employee's supervisor played with her buttocks.

93.    The supervisor also told the female employee he would approve her time off if she would have sex with him on a particular day.

94.    Many of the female workers complained and reported the harassment to managers, supervisors, and human resources.

95.    Human Resources managers and other supervisors observed some of the harassment and took no action.

96.     Some supervisors treated the harassment as gossip and discouraged the females from complaining about the sexual harassment.

97.     Employees at the facility knew if female employees and others complained about sexual harassment by the Assistant Manager, he would cause Defendants to fire the employees.

98.     Human Resources ignored the oral and written complaints of sexual harassment from female workers.

99.     In most cases, Human Resources failed to investigate.

100.    The unwelcome sexual harassment experienced by a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray was sufficiently severe or pervasive to alter the terms and conditions of their employment and to create a sexually hostile work environment.

101.    The harassment detailed above unreasonably interfered with the female employees' work environment.

102.    The effect of the unlawful practices complained of above has been to deprive a class  of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

103.    The unlawful employment practices complained of above are part of a continuing course of sex harassment perpetrated by Defendants against a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays,

12

Fredericka Smith, Akedra McKinnie, and Phebe Bray at its facility located at 3300 Ridgecrest Road, Jackson, Tennessee, that persisted since at least January 2021.

104. The unlawful employment practices complained about above were intentional.

105. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray.

106. As a direct and proximate result of Defendants' unlawful conduct, a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray, suffered actual pecuniary and non-pecuniary damages, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience.

## II.    RETALIATION CLAIM

107. Since at least on or around January 2021, Defendants engaged in unlawful employment practices at its facility located at 3300 Ridgecrest Road, Jackson, Tennessee 38305 in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a).

108. The unlawful employment practices at the Jackson facility include subjecting Fredericka Smith, Akedra McKinnie, and other aggrieved females as a class to retaliation by terminating their employment because they opposed or reported unlawful employment practices.

109. The Commission incorporates by reference paragraphs 76-99.

110. Female employees and other male Team Leads knew the Assistant Manager would cause Defendants to fire employees if they complained about him.

13

111.    Fredericka Smith complained to Human Resources after her supervisor, a male, said in a suggestive manner that he always wanted to know what Smith looked like on her knees.

112.    Other male employees besides Smith's supervisor sexually harassed her.

113.    Male employees touched Smith inappropriately multiple times.

114.    One male employee would grab Smith's hand causing her to touch his genitals.

115.    Another Team Lead showed Smith a pornographic video of an employee performing oral sex on him.

116.    Smith's coworker, the former female Team Leader, encouraged Smith to complain after her supervisor made a sexually offensive comment.

117.    Smith reported the comment to Human Resources, but nothing happened.

118.    Rather, the supervisor continued to sexually harass Smith.

119.    Most female employees would not complain for fear of losing their jobs.

120.    McKinnie had the same male supervisor as Smith.

121.    The supervisor made unwanted sexual comments about McKinnie, including comments about her body.

122.    When the supervisor and a team lead went to McKinnie's Facebook and began making comments about her photo and how she looked, McKinnie complained to Human Resources around June 2024 about several male employees.

123.    McKinnie's new supervisor then began issuing attendance points against McKinnie.

124.    Defendants did not investigate McKinnie's allegations.

125.    Defendants later discharged McKinnie for alleged attendance issues.

126.    McKinnie believes management began scrutinizing her after her complaints.

127.   The unlawful employment practices complained about above were intentional.

128.   The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Smith, McKinnie, and other aggrieved former and current female employees.

129.   As a direct and proximate result of Defendants' unlawful conduct, the class of aggrieved current and former female employees, including but not limited to Smith and McKinnie, suffered actual pecuniary and non-pecuniary damages, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience.

### III.    CONSTRUCTIVE DISCHARGE CLAIM

130.   Since at least around 2021, Defendants engaged in unlawful employment practices at its facility located at 3300 Ridgecrest Road, Jackson, Tennessee, in violation of Title VII.

131.   The unlawful employment practices at the Jackson facility include subjecting Sandra Barlow, a machine technician, and other female employees to a constructive discharge.

132.   Barlow spent her breaks around male employees who provided daily commentary on how her backside looked while supervisors sat and laughed.

133.   Barlow believes management was part of the problem.

134.   Management engaged in sexual relations with subordinate employees in and around the factory.

135.   Defendants' culture of harassment was so toxic that Barlow resigned in a few months to go work for another employer.

15

136.    The unlawful employment practices complained about above are part of a continuing course of constructive discharge perpetrated by Defendants against Sandra Barlow and a class of aggrieved current and former female employees at its facility located at 3300 Ridgecrest Road, Jackson, Tennessee, that has persisted since at least January 2021.

137.    As a direct and proximate result of Defendants' unlawful conduct, a class of aggrieved current and former female employees suffered actual pecuniary and non-pecuniary damages, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience.

138.    The unlawful employment practices complained about above were intentional.

139.    The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of aggrieved former and current female employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants Toyota Boshoku Jackson Tennessee, LLC, and Toyota Boshoku America, Inc., its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from subjecting employees to a hostile work environment because of sex.

B.    Grant a permanent injunction enjoining Defendants Toyota Boshoku Jackson Tennessee, LLC, and Toyota Boshoku America, Inc., its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in any unlawful retaliation against individuals who oppose employment practices reasonably believed to be unlawful under Title VII, or against individuals who assist, encourage, and/or support others who oppose employment practices reasonably believed to be unlawful under Title VII.

16

C.      Grant a permanent injunction enjoining Defendants Toyota Boshoku Jackson Tennessee, LLC, and Toyota Boshoku America, Inc., officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from subjecting employees to a constructive discharge because of sex.

D.      Order Defendants Toyota Boshoku of Jackson Tennessee, LLC, and Toyota Boshoku America, Inc., to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, and which eradicate the effects of their past and present unlawful employment practices.

E.      Order Defendants Toyota Boshoku Jackson Tennessee, LLC, and Toyota Boshoku America, Inc., to make whole a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray by providing appropriate back pay and prejudgment interest in amounts to be determined at trial and other affirmative relief necessary to eradicate the effects of unlawful employment practices.

F.      Order Defendants Toyota Boshoku Jackson Tennessee, LLC, and Toyota Boshoku America, Inc., to make whole a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray by providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

G.      Order Defendants to make whole a class of aggrieved current and former female employees, including but not limited to Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including

17

emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

H.     Order Defendants to pay Sandra Barlow, Brandi Person, Lisa Hays, Fredericka Smith, Akedra McKinnie, and Phebe Bray and a class of aggrieved current and former female employees punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

I.     Grant such further relief as the Court deems necessary and proper in the public interest.

J.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

/s/*Faye A. Williams*
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

/s/*Markeisha K. Savage*
MARKEISHA K. SAVAGE
Assistant Regional Attorney
TN Bar No. 24693
markeisha.savage @eeoc.gov

/s/*Donnie Snow*
DONNIE SNOW
Trial Attorney
TN Bar No. 030585
Donnie. Snow@eeoc.gov

18

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38103
(901) 685-4609